**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

**ROCK HILL DIVISION**

| | | |
|---|---|---|
| MONICA WHITE, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 0:04-23225-CMC-BM |
| | ) | |
| v. | ) | |
| | ) | |
| THELATHIA BAENES BAILEY, | ) | |
| individually and as Director of | ) | **REPORT AND RECOMMENDATION** |
| TRIO Programs; JOHN | ) | |
| CATALANO, individually and as | ) | |
| Dean of USC Lancaster; and USC | ) | |
| LANCASTER, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This action has been filed by the Plaintiff asserting six causes of action. Plaintiff, an African-American female, was formerly employed by the Defendant USC Lancaster.

The Defendants filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on October 27, 2005. After receiving four extensions of time to file a memorandum in opposition to the Defendants' motion, Plaintiff filed her memorandum in opposition on January 10, 2006. Defendants filed a reply memorandum on January 19, 2006. Defendants' motion is now



1

before the Court for disposition.[1]

## Claims Presented

As noted, Plaintiff originally asserted six causes of action in her Complaint, as follows: violation of First Amendment rights (first cause of action); breach of employment contract (second cause of action); wrongful termination in violation of public policy (third cause of action); race discrimination in violation of 42 U.S.C. § 1981 (fourth cause of action); race discrimination in violation of 42 U.S.C. § 1983 (fifth cause of action); sex discrimination in violation of 42 U.S.C. § 1983 (sixth cause of action). In her response to the Defendants' motion for summary judgment, Plaintiff consents to dismissal of USC Lancaster as a party Defendant in her first cause of action. Therefore, that cause of action only continues against the Defendants Bailey and Catalano. Plaintiff also consents to the withdrawal of her claims for breach of contract (second cause of action) and wrongful termination (third cause of action), without prejudice, so that she can pursue these claims, if at all, in state court. Finally, Plaintiff withdraws her claims under § 1981 and § 1983 (fourth, fifth and sixth cause of action).

As a result of these actions, the only claim remaining to be litigated in this case is Plaintiff's first cause of action for violation of her First Amendment rights, asserted against the Defendants Bailey and Catalano in their individual capacities. There are no claims remaining that are being asserted against the Defendant USC Lancaster, and that Defendant is therefore entitled to dismissal as a party Defendant.

---

[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), D.S.C. The Defendants have filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.



## **Background and Evidence**

Plaintiff was hired by USC Lancaster in November 2001 as an employee in the TRIO[2] Program.  Plaintiff was hired by the Defendant Bailey, Director of TRIO Programs, and the Defendant Catalano, Dean and Chief Administrative Officer at USC Lancaster.  Plaintiff's Deposition, pp. 30-33, 46; Defendants' Exhibits 2 & 3.  Bailey is an African-American, while Catalano is white.

Plaintiff testified that in the summer of 2003 she questioned Bailey's approval of the vacation requests of three of her co-workers while denying Plaintiff's vacation request due to, according to Bailey, Plaintiff's record of excessive tardiness and absences.  Plaintiff's Deposition, pp. 57-59; Defendants' Exhibit 9.  Plaintiff asked Catalano if he could override Bailey's decision, but ultimately decided not to ask Catalano to override the decision.  Plaintiff's Deposition, p. 66.  Plaintiff testified that later during that summer of 2003, she complained to Catalano that Bailey had said she wanted to hire a white candidate to fill a vacancy in the Upward Bound component of the TRIO Program because the person selected would have to be dealing with the "white folks" at Beaufort High School.  Plaintiff's Deposition, pp. 69, 71-72.   An interview panel was established for the purpose of filling vacancies in the Upward Bound positions, which consisted of six USC Lancaster faculty and staff,  including the Plaintiff, Bailey, as well as USC Lancaster's Human Resources Officer, Zantrell Clybourn (African-American).  This interview panel unanimously recommended Jennifer Newsome (white female) and Dominique Hemphill (African-American female) for two vacant Upward Bound positions, and they were hired.  Plaintiff's Deposition, pp.

---

[2]"TRIO Programs help low-income Americans enter college, graduate and move on to participate more fully in their economic and social lives." See www.sc.edu/trio/faq.htm



44-45, 61-63. Newsome received the position relating to Beaufort High School. Plaintiff's Deposition, pp. 62-63.

In October 2003, Plaintiff received a written reprimand from Associate Dean of Academics and Student Affairs Ron Cox, Bailey's supervisor, for failure to adhere to the school's purchasing policy and for improper use of University facilities. Plaintiff's Deposition, pp. 73-76; Defendants' Exhibit 12. Plaintiff also received a written reprimand from Bailey in November 2003 for various performance deficiencies and attendance problems, which included Plaintiff being placed on probation for thirty (30) days. Plaintiff's Deposition, pp. 76-77; Defendants' Exhibit 13. The record reflects, however, that Plaintiff continued to have performance and attendance problems for which she received admonishments from Bailey. See Plaintiff's Deposition, Defendants' Exhibits 16-19.

On April 21, 2004, Plaintiff was suspended by Bailey for excessive tardiness. Plaintiff's Deposition, Defendants' Exhibit 21. When Plaintiff returned to work, she received a memorandum from Bailey concerning her attendance and scheduling problems, and notifying her that any continued problems would result in her termination. Plaintiff's Deposition, p. 114; Defendants' Exhibit 22. Plaintiff testified that she then met with Bailey on April 30, 2004, during which Bailey was angry and cursed at her. Following this meeting, Plaintiff thought about going to see Catalano but instead drove to the Lancaster Police Department. The police officers advised Plaintiff that her complaint was an administrative matter that she should discuss with Catalano. Plaintiff's Deposition, pp. 119-120, 147-148.

Plaintiff then went to see Catalano the following Monday, May 3, 2004. That same day, Bailey checked the records concerning Plaintiff's lunch time for the previous Friday (April



30th), which indicated Plaintiff had taken a two hour lunch; see <u>Plaintiff's Deposition, Defendants' Exhibit 23</u>; and decided to terminate Plaintiff's employment.[3] She prepared a termination letter and gave it to Associate Dean Cox, who approved the termination letter.  Plaintiff was then called to the conference room, where Bailey handed her the termination letter in the presence of Dean Cox and Human Resources Director Clybourn.     <u>Bailey Deposition</u>, pp. 16-19, 21, 23-24; <u>Plaintiff's Deposition, Defendants' Exhibit 23</u>.

Plaintiff claims in her first cause of action that her dismissal was a retaliatory discharge in violation of her First Amendment rights.  Specifically, Plaintiff asserts that Bailey terminated her for complaining to Catalano about Bailey wanting to hire a white candidate to fill a position at a predominately white high school.

### <u>Discussion</u>

In order to avoid summary judgment on her First Amendment retaliatory discharge claim, Plaintiff must present sufficient evidence to create a genuine issue of fact as to whether 1) she engaged in the particular speech that she claims caused her alleged retaliatory discharge, 2) her speech was constitutionally protected, and 3) her constitutionally protected speech motivated her discharge such that "but for" that speech, she would not have been discharged.  <u>Dennison v. County Frederick, Va.</u>, 921 F.2d 50, 53 (4th Cir. 1990), <u>cert.</u> <u>denied</u>, 501 U.S. 1218 (1991); <u>Holland v. Rimmer</u>, 25 F.3d 1251, 1254 (4th Cir. 1994); <u>Huang v. Board of Governors of the UNC</u>, 902 F.2d 1134, 1140 (4th Cir. 1990).  For purposes of summary judgment, Defendants do not contest that

---

[3]Plaintiff testified that she was not gone for lunch that long, but that she had forgotten to clock in upon her return.  <u>Plaintiff's Deposition</u>, pp. 116-118.



Plaintiff engaged in the particular speech that she claims caused the alleged retaliatory discharge.[4]

However, Defendants do contest that Plaintiff's speech was constitutionally protected speech, or that

any constitutionally protected speech in which she engaged caused her discharge.

In order to be constitutionally protected speech, a public employee's statements must

be on a matter of public concern. "Speech involves a matter of public concern when it involves an

issue of social, political, or other interest to a community." Urofsky v. Gilmore, 216 F.3d 401, 406-

407 (4th Cir. 2000); see Connick v. Myers, 461 U.S. 138, 146 (1983). Further, in determining

whether an employee's speech is entitled to First Amendment protection, the Court must also

determine whether the speech is "made primarily in the [employee's] role as citizen or primarily in

his role as employee". Urofsky, 216 F.3d at 407, (quoting Terrell v. University of Texas Sys. Police,

792 F.2d 1360, 1362 (5th Cir. 1986)). See also DiMeglio v. Haines, 45 F.3d 790, 805 (4th Cir. 1995)

[noting that "the [Supreme] Court [has] distinguished between speaking as a citizen and as an

employee, and [has] focused on speech as a citizen as that for which constitutional protection is

afforded"]. Whether speech is that of a private citizen addressing a matter of public concern is a

question of law for the Court. Urofsky, 216 F.3d at 406.

Defendants argue that Plaintiff's alleged complaint to Catalano about Bailey wanting

to hire a white for the vacant TRIO position was not public speech because it arose out of her service

on the interview panel and was therefore clearly job related, and was also made in the context of

Plaintiff's pre-existing and ongoing personal conflict with, and grievances against, Bailey.

---

[4]While not contesting this issue for purposes of summary judgment, Bailey testified that she never made the statement that Plaintiff attributes to her, while Catalano testified that Plaintiff never reported to him that Bailey had expressed a preference for hiring a white candidate. Bailey Deposition, pp. 7-8, 30; Catalano Deposition, pp. 7-8, 19.



However, Defendants also concede that issues of racial segregation and discrimination are matters of public concern.  Therefore, the Court cannot dismiss out of hand Plaintiff's claim that she was speaking on a matter of public concern, and must examine the form and context in which this statement was given to resolve this issue.  See Connick v. Myers, 461 U.S. at 147-148 [test for whether speech is on a matter of public concern involves inquiring not just into the content of the speech, but also into the form and context of the statement as revealed by the whole record].

The Fourth Circuit has elaborated on the Connick public concern test by holding that

> all public employee speech that by content is within the general protection of the first amendment is entitled to at least qualified protection against public employer chilling action except that which, realistically viewed, is of purely "personal concern" to the employee - - most typically, a private personal grievance...The focus is therefore upon whether the "public" or the "community"' is likely to be truly concerned with or interested in the particular expression, or whether it is more properly viewed as essentially a "private" matter between employer and employee.

Merritt v. Mullen, 49 F.Supp.2d 846, 849-850 (E.D.Va. 1999), (citing Berger v. Battahlia, 779 F.2d 992, 998-999 (4th Cir. 1985)). Cf. Locurto v. Giuliani, No. 04-6498, 2006 WL 1130906 (2d Cir. 2006).   Here, the general issue of racial discrimination or preference in hiring was not a "private personal grievance" of the employee (Plaintiff) in this case. Plaintiff was not herself applying for the position at issue, nor was her own employment situation involved.   Plaintiff testified that she disagreed with the hiring policy Bailey allegedly was going to employ for the position, because she "believe[d] if an applicant is black and qualified they should not be overlooked because they're not white.  So I did make a comment concerning that...." Plaintiff's Deposition, p. 61.  Under these circumstances, and in the context of Plaintiff's complaint to Catalano about this issue "as revealed by the whole record", the undersigned concludes that Plaintiff's communication did not involve a purely private concern. See Merritt, 49 F.Supp.2d at 849; Connick, 461 U.S. at 147-148, 150.

7



Commenting on a situation of perceived racial discrimination also outweighs the interest of her employer in promoting efficiency in its operations, if indeed it had any effect on any such efficiencies at all. *Cf.* Cromer v. Brown, 88 F.3d 1315, 1325, 1327 (4th Cir. 1996) [discussing balancing test between employee and employer and noting importance of issue of internal racial discrimination by a public employer]. Therefore, the undersigned concludes that Plaintiff's alleged statement to Catalano was constitutionally protected speech.

However, even assuming the speech at issue was constitutionally protected public speech, in order to avoid summary judgment Plaintiff must still have presented sufficient facts and evidence to show that her protected speech is what motivated her discharge. Here, the speech at issue occurred in the summer of 2003, almost a full year before her discharge in May 2004. See Hooven-Lewis v. Caldera, 249 F.3d 259, 278 (4th Cir. 2001) [no causation where there was a six month time gap between the protected activity and the adverse employment action]; Clark County School District v. Breeden, 532 U.S. 268, 273 (2001) [three to four month gap between protected activity and adverse action insufficient to show causation]. The mere fact that Plaintiff was terminated sometime after she had engaged in protected activity is not, standing alone, sufficient to establish causation. Id; *cf.* Cecilino v. Allstate Ins. Co., 908 F.Supp. 519, 532 (N.D. Ill. 1995) [a simple showing that an adverse action occurred after a complaint of discrimination "is not even enough to make out a prima facie case of retaliation, let alone survive a motion for summary judgment"] [Title VII/ADEA case].

Further, it is clear in the evidence that Plaintiff and Bailey were already on bad terms prior to the speech at issue, and that Plaintiff had already been disciplined by Bailey for attendance problems prior to Plaintiff engaging in any protected activity. Plaintiff's Deposition, pp. 57-59, 65-



66; Defendants' Exhibit 9. Additionally, after the speech at issue, Plaintiff was disciplined again for excessive tardiness and other issues not just by Bailey, but also by Associate Dean of Academic and Student Affairs Ron Cox. Plaintiff's Deposition, pp. 73-76; Defendants' Exhibit 12. There are no allegations that Cox had any retaliatory animus against the Plaintiff.

As for the incident which precipitated Plaintiff's termination, Plaintiff herself does not deny that the Defendants' records show that she took a two hour lunch; rather, she merely claims that she was not really out for lunch that long and had just forgotten to clock in upon her return. Plaintiff's Deposition, pp. 116-118; Defendants' Exhibit 23. This violation (as shown by Defendants' records) also occurred not only after Plaintiff's previous attendance counseling and reprimands, but only two days after she had returned to work following a suspension (for excessive tardiness), at which time she had been warned that any further attendance problems would "result in immediate dismissal." See Plaintiff's Deposition, Defendants' Exhibits 21 and 22. The undersigned can discern no discriminatory motivation in this evidence. *Cf.* Mt. Healthy City Bd. of Education v. Doyle, 429 U.S. 274, 287 (1977) [a public employer may avoid liability if it can establish that the employment action would have been made in any event for reasons unrelated to the exercise of any First Amendment rights].

In any event, Plaintiff has presented no evidence whatsoever to show that Bailey even knew about her alleged comment to Catalano. Plaintiff testified that during her heated discussion with Bailey of April 30, 2004, Bailey made the statement: "You think I'm not aware you talking to the damn deans. I know you talk to the deans." Plaintiff's Deposition, p. 119. However, Plaintiff's testimony with respect to this lone comment (assumed to be true for purposes of summary judgment) is not sufficient to avoid summary judgment. This alleged comment by Bailey does not identify a



particular dean or any particular comment Plaintiff had made to a dean, and was made almost a year after Plaintiff's purported protected speech.  Further, Bailey specifically testified that she had no knowledge of Plaintiff having complained to Catalano in 2003 that she was seeking to hire a white person for a particular TRIO position, regardless of whether she [Bailey] admits to having made any such comments.  Bailey Deposition, pp. 13, 39-40.  Catalano also testified that he never spoke to Bailey about any discussions he had had with the Plaintiff prior to Plaintiff's discharge.  Catalano Deposition, p. 21.  See Constantine v. Rectors and Visitors of George Mason Univ., 411 F.3d 474, 501 (4th Cir. 2005) ["In order to establish this causal connection [between her protected First Amendment speech and the adverse employment action alleged] a plaintiff in a retaliation case must show, at the very least, that the [retaliator] was aware of her engaging in protected activity."]; Ambrose v. Township of Robinson, Pa., 303 F.3d 488, 493-94 (3d Cir. 2002) ["It is only intuitive that for protected [speech] to be a substantial or motivating factor in a decision, the decision maker[] must have been aware of the protected [speech]."]; Tharling v. City of Port Lavaca, 329 F.3d 422, 428 (5th Cir. 2003) ["It is axiomatic that a party cannot be 'substantially motivated' by [speech] of which that party is unaware."]; Hooven-Lewis, 249 F.3d at 278 [holding that "protected disclosure" could not have been the cause of adverse employment action where decision-maker did not know of protected disclosure when he took adverse action].

Plaintiff has pointed to no evidence, such as affidavits or deposition testimony, to support her claim that the reason she was discharged in May 2004 was because of comments she had made to Catalano about Bailey's activities in the summer of 2003, or to show that Bailey even knew about Plaintiff's alleged comments. Nor is there any evidence to show that Catalano, to whom the



comment was allegedly made, played any role in Petitioner's termination.[5] Plaintiff's mere speculation that the reason she was discharged in May 2004 was because of a comment she made to Catalano the summer of 2003, without any other supporting evidence, is simply not sufficient to create a genuine issue of fact as to whether her termination was due to a retaliatory animus.  See Contemporary Mission v. United States Postal Serv., 648 F.2d 97, 107, n.14 (2d Cir. 1981) [An "opposing party's facts must be material and of a substantial nature, not fanciful,...conjectural, speculative, nor merely suspicions"] (internal citations and quotation marks omitted); Kulak v. City of New York, 88 F.3d 63, 71 (2nd Cir. 1996) ["conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment"]; Nicolo v. Philip Morris, Inc., 201 F.2d 29, 33 (1st Cir. 2000) [Conjectural allegations and conclusory assertions do not suffice to establish a genuine issue of fact].   Therefore, Plaintiff has failed to establish causation.

### Conclusion

Based on the foregoing, it is recommended that the Defendants' motion for summary judgment be **granted**, and that this case be **dismissed**. Plaintiff's claims for breach of contract and wrongful termination should be **dismissed**, without prejudice.

_____
Bristow Marchant
United States Magistrate Judge

Columbia, South Carolina

June 9, 2006

---

[5]As previously noted, after Bailey prepared the termination letter, she presented it to Dean Cox for approval, not Dean Catalano; and when Bailey gave Plaintiff the termination letter it was in the presence of Cox and Human Resources Director Clyburn. Catalano was not present. Bailey Deposition, pp. 16-19, 21, 23-24; Plaintiff's Deposition, Defendants' Exhibit 23.

